GENESEE. The (FREREZ v.). See Case No. 5,108.

GENEVA BOXER. The (SHECKLER v.). See Case No. 12,735.

GENNEY (EMERSON v.). See Case No. 4,438.

---

## Case No. 5,323.

### The GENTLEMAN.

### [1 Blatchf. 196.] 1

Circuit Court, S. D. New York.   Oct. Term, 1846.2

SHIPPING—SAILING WITH INCOMPETENT CREW—DAMAGE TO CARGO—EVIDENCE.

1. Where the master of a vessel is charged with having sailed on a voyage from the coast of Africa with a sick and incompetent crew, whereby delay was caused, and damage ensued to the cargo and a loss of price in selling it. the question is what were the facts on which he was called to exercise his best judgment at the time he sailed; not what actually happened afterwards.

2. Where, in such a case, the evidence of the crew as to their own health can be had, it must control, in opposition to the testimony of persons experienced in the trade of the African coast, as to the effect of the given sickness upon the crew and the propriety of the master's leaving as he did.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by McCracken and Livingston, against the barque Gentleman. The libel charged that the vessel sailed from New-York on a voyage to the western coast of Africa, on the 13th of June, 1842, under a charter party to the libellants, for a voyage from the port of New-York to one or more ports in the Cape de Verd Islands, and thence to one or more ports on the west coast of Africa, and back to New-York direct or via the Cape de Verd Islands; that she arrived at Gambia on the 22d of August, after touching at Bona Vista, St. Jago and Goree; that she sailed from Gambia on the 25th of August, visited some other ports on the African coast, and returned to Gambia on or about the 25th of September; that she remained there till the 2d of October, when she set sail upon her homeward passage. having taken in about 64,000 pounds of hides, belong-

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

2 [Reversing Case No. 5,324.]

ing and consigned to the libellants; that on the arrival of the vessel at Gambia, nearly all the crew were extremely sick, in consequence whereof the master placed them in the hospital; that at the time of sailing on the 2d of October, the master, in violation of his duty, and unmindful of the rights of the libellants, took his crew out of the hospital in their sick and infirm condition, and placed them on board the vessel, and set sail from Gambia; that the crew were all sick, except one man, and were insufficient and incompetent to the working of the vessel, having been taken out of the hospital for the purpose of departing, although in no better health than when they entered it; that the master was warned by the attending physician at Gambia, that the men would grow worse at sea, as it was the season of rains, and they would necessarily be exposed to wet; but that the master insisted upon sailing and did sail with the same crew, although it was easy and practicable to have obtained a proper and sufficient crew at Gambia, if not of whites, certainly of natives; that the vessel after being out eleven days reached Bona Vista on the 13th of October, and put in there, whereas she ought to have reached there in three days; but that she could carry scarcely any sail, owing to the weakness and uselessness of the crew, and the little labor they performed was extorted from them only by violence and abuse; that there was no necessity for the vessel to put in at Bona Vista, except from the feebleness of the crew; that she lay at Bona Vista from the 13th of October till the 18th of November, for no other purpose than to wait for the recovery of the crew, who were sick in the hospital on shore, till about the 17th of November, when they went on board, being still sick; that, during the period of that detention, five seamen from a vessel which had been wrecked, offered to ship on board, but the master refused to employ them; that, the vessel arrived at St. Jago on the 19th of November, and remained there till the 23rd; that the U. S. consul there sent three men home in the vessel, but the master refused to give them any wages, in consequence of which they were sulky and worked with reluctance, and the crew, with this addition, was still incompetent to the proper sailing of the vessel; that, in consequence of the various detentions of the vessel, she came upon the North American coast at a very unfavorable season; that, by reason of the insufficiency of the crew and the difficulty of working the vessel properly, the master kept her in the trade winds several days longer than he ought to have done, and did not arrive off the port of New-York till the 4th of January, 1843; that she was then driven off again, after having taken a pilot, and was obliged to put in at Newport and did not finally reach New-York till the 18th of January; that the cargo of hides shipped on board at Gambia, suffered great deterioration and damage from worms and otherwise, in consequence of the said unreasonable and improper detention of the vessel, and that the libellants had suffered

loss and damage by reason thereof to the amount of $3,380; and also that at the time when the vessel, if properly fitted and manned upon her departure from New-York on her outward passage, and on her departure from Gambia on her return voyage, and if properly navigated outward and homeward, would, in the ordinary course, have arrived at New-York, say in October, the market for hides was materially better than when she actually did arrive, by reason whereof the libellants suffered further damage.

It will not be material to refer particularly to the answer of the claimants. It was such as to put the libellants to their proof in order to establish their claim for damages.

The district court pronounced in favor of the libellants [Case No. 5,324], and the claimants appealed to this court.

John Anthon and William Emerson, for libellants.

Daniel Lord, for claimants.

NELSON, Circuit Justice. The proofs, in this case, have satisfactorily disposed of the claim for damages founded upon that part of the controversy which respects the manning and fitting out of the vessel at the port of New-York, her outward voyage to the coast of Africa, her trading along or upon that coast, and her homeward voyage after she left the port of St. Jago. The allegations in the libel impeaching the conduct of the master and owners in respect to these several matters, are abundantly disproved, or remain without proof, and were substantially given up on the hearing.

The matters, therefore, which are open to observation and dispute, and upon which the decision must necessarily rest, are brought within narrow limits; to wit, the conduct of the master after his vessel arrived the second time at Gambia, on the 25th of September, as stated in the libel, but, in fact, as is apparent by the proof, about the 8th or 10th of that month, and until he finally left the port of St. Jago. The case is brought, confessedly, within these limits; as there can be no reasonable doubt or dispute concerning any other part of the voyage, according to the evidence, either as it respects the ship, or the conduct of the master. And, in my judgment, we may go further, and say that the matter in controversy must be confined to still narrower limits; to wit, the conduct of the master at the port of Gambia, where he took in his cargo, and whence he sailed on his homeward voyage. For, if he was guilty of no violation of duty there, it is quite clear that he is not chargeable with the detention of the vessel at the Cape de Verd Islands. That was the result of causes, over which, in my judgment, he had no control, unavoidable and overwhelming, so as to preclude any possible reparation for the delay while there.

The ground of complaint in the libel in respect to the conduct of the master at Gambia is, that in violation of his duty, and unmindful of the rights of the libellants, he took his crew out of the hospital while sick and infirm, and placed them on board the vessel and set sail on his homeward voyage; that the crew were insufficient and incompetent to the proper working of the ship; that he was advised by the attending physician that the hands would be subject to a relapse at sea, by reason of exposure during the rainy season; that the master insisted upon sailing with the same crew and without any additional hands, although it was easy and practicable to have obtained a sufficient and competent crew of the natives of that region; and that, in consequence thereof, the vessel was insufficiently manned and delayed on her voyage.

The facts as proved are, that the vessel arrived at Gambia about the 8th or 10th of September, for the purpose of taking in her homeward cargo, her crew all in good health and condition; that on the 15th three of the hands were taken down with the coast fever, and placed in the hospital, on the 20th two others, the first and second mates, and two more on the 23rd and 24th of the month; that the loading of the ship with her cargo was going on in the meantime, by the natives, who are usually employed for this purpose, the crew having at no time been subject to that labor, as it is customary to save them from exposure and fatigue by making use of the natives; that on the 27th and 28th of the month the three who were first sent to the hospital left it, and came on board the vessel, having been there two of them twelve and one thirteen days; that on the 27th the first and second mates left, having been seven days in the hospital; that on the 29th the two remaining hands left; and that on the 2d of October the vessel sailed.

The degree or intensity of the fever is left upon the evidence somewhat vague, as the hospital physician has no recollection on the subject, and the account given by the hands is contradictory. But the weight of it is, that the attack was not accompanied with any great acuteness or severity, as may also be inferred from the periods of confinement to the hospital. All the evidence agrees that the hands, though considerably debilitated by the sickness, and less capable of performing their duty, were anxious to go on board and man the ship for home, showing not only their willingness but their ability; and nearly all the witnesses agree, that the physician concurred in the opinion that they had better go on board, take charge of the ship, and leave the coast, and that, by taking care of themselves, they would, probably, be in a better condition than to remain longer; though the recollection of the physician himself is somewhat different, or rather there is an absence of recollection in this respect on his part, and he thinks it would have been more prudent if the cap-

tain had delayed the vessel a few days longer. to have enabled the crew to recover their strength. He does not say or intimate, however, that he expressed this opinion to the captain at the time.

This is substantially the state of facts, according to the evidence, in respect to the condition of the crew at the port of Gambia, and upon which the master was called to exercise his best judgment at the time of his departure on his homeward voyage; and, undoubtedly, were we to judge of the soundness or propriety of its exercise from the result, or from what actually happened afterwards to the crew, there could be no great difficulty in arriving at the conclusion that he had mistaken his duty. The crew were again taken down with the fever before the vessel reached Bona Vista, and that, with the sickness of the captain himself, occasioned the great detention at that place. But the question is, whether under the circumstances as stated, and as existed at Gambia at the time of his departure, the master was guilty of such a gross error in judgment and .violation of duty, in leaving the coast as he did. without additional hands to man the ship, as shou'd visit upon him all the consequences which subsequently happened from the return of the disease. I am compelled to say, after a very deliberate consideration of the case, that he was not; and that, laying out of view the recurrence of the sickness in the course of the voyage, which I think constitutes no part of the circumstances· to be taken into account in passing upon the fitness and propriety of his conduct, the question is clear of any great difficulty.

The weight of the evidence of the hands themselves is, that they had recovered from their sickness, and were competent to man and sail the vessel, at the time of their departure, and the mate states, that they left with the advice and concurrence of the physician, who said he did not think they would be likely to have a relapse, and that if they got wet, they might have a chill, but nothing more, and that he settled with the physician, and asked his opinion at the time.

Very little weight can be given to the testimony of several gentlemen, experienced in the trade of the African coast, as it respects the effect of the fever upon the crew, and the propriety of the master's leaving the coast without additional hands. The opinion expressed must of course depend upon the extent and degree of the disease; and of that they knew nothing. The hands themselves are the best witnesses for this purpose; the physician has no recollection upon the subject; and taking the evidence of the crew, in respect to their own health and condition at the time, as controlling, I think the preponderance is decidedly with the claimants, and that the facts proved afford a justification of the master.

In the view thus taken of the case, it is important to enquire whether or not it was practicable to procure at the time additional hands at Gambia. It is conceded that there were no white seamen there; and it is, to say the least, a matter of great doubt, upon the evidence, if natives could have been obtained for a voyage to the United States at that season of the year. But, if the case turned upon this question, I should be inclined in favor of the libellants. There is no evidence that the master took any steps to procure an additional crew. He shcu'd, at least, have made the effort, and the failure to procure it would have been the best evidence of the impracticability.

Neither is it important to enquire whether proper .measures were taken, in the course of the voyage, to beat the hides for the purpose of preventing the injurious effect of worms. .There is no allegation in the libel of a breach of duty on the part of the master in this respect. The gravamen of the complaint is the unreasonable and improper detention of the vessel, attributable to his negligence and misconduct. The damage resulting from the injury to the hides is consequential. If the ground of the complaint falls, the consequential damages of course fall with it.

The voyage was an unfortunate one; but I am satisfied, upon the evidence, that it is to be attributed to the misfortune, rather than the fault of the master, and that it would be unjust to hold him responsible for the consequences. I must, therefore, reverse the decree below, with costs.